HAMILTON F. KEAN and Others, Members of the Copartnership of KEAN, TAYLOR & CO., Plaintiffs, v. MARYLAND CASUALTY COMPANY, Defendant.

Supreme Court, New York County, June 27, 1926.

Insurance — larceny insurance — action on bankers and brokers' blanket bond to recover securities stolen from plaintiffs — larceny, of which the perpetrator has been convicted, was based on false and fraudulent representations through which the securities were delivered by the plaintiffs — loss occurred in plaintiffs' office within terms of policy.

The defendant is liable on a bankers and brokers' blanket bond given the plaintiffs to protect them against loss by larceny, since it appears that a third person, through false and fraudulent representations and statements, procured from plaintiffs certain United States treasury certificates under circumstances amounting to statutory larceny, for which crime said third person has been convicted in Pennsylvania, where the fraudulent scheme originated.

The securities, at the time of the loss, were in the plaintiffs' office, one of the places specified in the policy, for the loss occurred the moment the plaintiffs sent the securities out of their office for delivery.

ACTION on policy of insurance known as " Bankers and Brokers Blanket Bond."

*Robert M. McCormick* [*Thomas C. Burke* and *Andrew Eckel* of counsel], for the plaintiffs.

*Edward J. Dowling* [*Henry deForest Baldwin, Thaddeus G. Cowell* and *James S. Hemingway* of counsel], for the defendant.

GIBBS, J.     Plaintiffs bring this action upon a policy of insurance known as " Bankers and Brokers Blanket Bond " to recover its face amount, $250,000, claiming a loss of $450,000 in United States Treasury certificates on November 18, 1922, through statutory larceny.     The issuance of the policy and that it was in full force and effect at the time of the alleged larceny is not denied by the defendant.     The policy insures plaintiffs against loss " through larceny (whether common law or statutory)."     The plaintiffs were defrauded of their United States Treasury certificates by a cleverly timed and concocted scheme built on false statements concerning " material matters of fact upon which the complainants (plaintiffs) relied in parting with the property or in delivering possession."     It will serve no useful purpose to go into all the details and ramifications of the criminal scheme.     Suffice it to say that it was carefully conceived, prepared and executed by a master mind in the juggling of checks and securities.     The perpetrator was duly indicted, convicted and sentenced to prison in the city of Philadelphia, Penn. (where the scheme was started in motion), upon the complaint of the plaintiffs.     I hold that in the light of section 1290 of the Penal Law the acts and representations of Knoblauch constituted statutory larceny.     Also that at the time of the loss of the securities they were in one of the places specified in the policy, to wit, in the plaintiffs' office, as the loss occurred the moment the plaintiffs sent them out of their office for delivery to the Federal Reserve Bank under Knoblauch's instructions.     It makes no difference where the fraudulent scheme originated or what means were used.     The covering clauses of the policy, a " blanket bond," are broad enough to cover the situation.     The defendant strenuously urges that the loss occurred because the plaintiffs extended credit to Knoblauch and " carried on their business in a very unbusinesslike way."     This contention is not fortified by the record.     The modern criminal is very resourceful. Often his ingenuity and cunning frustrate and baffle the best of honest business methods.     No business system has yet been devised which is absolutely " crook " proof.     Nor does the record uphold defendant's contention that this was a " trading transaction." It would be strange indeed if false representations as to material

facts believed and relied on, causing one to be deceived to the extent of parting with nearly $500,000, could be classified as a "trade." The transaction in point of fact was a straight brokerage and so appears on the statements and books of the plaintiffs. The record clearly shows that the plaintiffs did not part with the certificates until they received Knoblauch's check, which check was subsequently returned for "insufficient funds." I am not unmindful of the other points raised in the briefs of the learned counsel for the defendant. The briefs do credit to their learning and devotion, but cannot alter the plain wording and meaning of the policy or the facts of the larceny about which there is in my judgment no substantial dispute. The defense rested upon the plaintiffs' case and stipulated that the jury be discharged and the court render the verdict with the same force and effect as if rendered by the jury.

The plaintiffs are entitled to judgment in the amount of $250,000 with interest from January 2, 1923, besides costs. Defendant may have an exception and thirty and sixty days to make a case. Submit order.